```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
BESSEMER TRUST COMPANY, N.A.,

                      Plaintiff,
                                                 02 Civ. 10276 (JES)
         - against -
                                                 MEMORANDUM OPINION
FRANCIS S. BRANIN, JR.,                          AND ORDER

                      Defendant.
------------------------------------------X
```

**SPRIZZO, D.J.:**

At issue before the Court is plaintiff's Motion for Summary Judgment on defendant's counterclaims. Plaintiff, Bessemer Trust Company, N.A. ("Bessemer" or "plaintiff"), brought this action against defendant, Francis S. Branin, Jr. ("Branin" or "defendant"), alleging a violation of the rule of law set forth in Von Bremen v. MacMonnies, 200 N.Y. 41, 93 N.E. 186 (1910) and Mohawk Maintenance Co. v. Kessler, 52 N.Y.2d 276, 419 N.E.2d 324, 437 N.Y.S.2d 646 (1981), which prohibits the impairment of good will which was transferred to a purchaser in connection with the sale of a business. Defendant counterclaimed for breach of contract, quantum meruit, and promissory estoppel based on the sale of the business and his offer of employment. Plaintiff filed a Motion for Summary Judgment on these counterclaims, dated February 8, 2007. The Court heard Oral Argument on May 3, 2007. For the reasons set forth below, the Court grants plaintiff's Motion.

## BACKGROUND

Defendant Branin was a principal at the investment firm of Brundage, Story and Rose, LLC ("Brundage") from 1982 to 2000, when Bessemer Trust Company ("Bessemer") acquired Brundage. Pl.'s Rule 56.1 Stmt ("Pl.'s 56.1") ¶¶ 3, 9; Def.'s Response to Pl.'s Rule 56.1 Stmt ("Def.'s 56.1") ¶¶ 3, 9. Branin was substantially involved in the negotiations for this acquisition. Pl.'s 56.1 ¶ 7; Def.'s 56.1 ¶ 7.

Under the Purchase Agreement, each former owner of Brundage would receive a lump sum payment and would be eligible to receive up to four future incentive payments, two of which the former owners, including Branin, eventually earned. Pl.'s 56.1 ¶¶ 17, 20, 22; Def.'s 56.1 ¶¶ 17, 20, 22.  The Purchase Agreement includes the following language:

> "The obligation of Buyer to consummate the Purchase is subject to the satisfaction (or waiver by Buyer) as of the Closing of the following *conditions*: . . . (vii) As of the Closing Date, each of the Sellers . . . shall have accepted in writing the terms of employment offered by Buyer, substantially in the form attached hereto as Exhibit D, *for a position generally comparable* to which he or she holds with the Company as of the date hereof." Decl. of Michael P. Collins in Opposition to Pl.'s Renewed Motion for Summary Judgment (hereinafter "Collins Decl."), Ex. 4, BT 06539 - 40 (emphasis added).

Similar language regarding a corresponding obligation on the part of the Seller follows:

> "The obligations of Sellers and the Company to consummate the Transaction and the Purchase are subject to the satisfaction (or waiver) as of the Closing of the following *conditions*: . . . (iv) As of the Closing Date, each of the Sellers . . . shall have accepted in writing the terms of employment offered by Buyer, substantially in the form attached hereto as Exhibit D, *for a position generally comparable* to which he or she holds with the Company as of the date hereof." Collins Decl. Ex. 4, BT 06541 - 42 (emphasis added).

The Purchase Agreement was executed on August 18, 2000. Pl.'s 56.1 ¶ 9; Def.'s 56.1 ¶ 9.  This Purchase Agreement includes a merger clause. Pl.'s 56.1 ¶ 10, Def.'s 56.1 ¶ 10.

Exhibit D, referenced in the Purchase Agreement, is a template offer letter that provides that "The terms of this offer letter do not and are not intended to create either an expressed or implied employment contract.  In fact, we do not offer any of our executives employment contracts." Collins Decl., Ex. 4, BT 06598.  The actual offer letter given to defendant includes this template language. See Collins Decl., Ex. 22, BT 07295.  It also provides that defendant

would be given the title "Managing Director" and sets forth terms of defendant's salary, bonus, vacation, pension, etc. See id at 07294. No details regarding defendant's job description or the responsibilities of the position of Managing Director are included in the offer letter.[1] See id.  The offer letter set forth a $350,000 salary, subject to review on an annual basis. See id.  The paragraph dedicated to defendant's bonus package provides for defendant's eligibility to participate in the Incentive Cash Bonus Plan, the determination of the amount of his bonus "at the discretion of the Salary Committee," the range of his bonus as "0% to 250% of base pay," and various other terms.[2] See id.

The Incentive Cash Bonus Plan is the subject of an Office Memorandum dated October 15, 2001, which allows that "Performance Appraisal forms and recommended merit increase/incentive compensation schedules . . . should be completed" by the memorandum's recipient. Collins Decl., Ex. 14, BT 07832.  This memorandum includes a compensation schedule which attaches performance categories to ratings and bonus ranges, see id. at BT 07837, and sets forth eleven categories of achievements to guide the review, see id. at BT 07844. The memorandum makes clear that this section "should reflect the 2001 performance that employees in your group should be evaluated on" and notes its purpose as "an attempt to make the appraisal form more objective." See id. at BT 07832.

Defendant accepted employment at Bessemer on September 29, 2000,

---

[1] In defendant's Counterclaims, he claims that, pursuant to the Agreement, Branin was "to be assigned the duties, responsibilities, authority, benefits and compensation consistent with that position. See Collins Decl., Ex. 20, ¶ 61.  The offer letter, however, does not substantiate this claim, see Collins Decl., Ex. 22, BT 07295.

[2] The Counterclaims indicate that "Bessemer set a bonus range for Mr. Branin that was substantially higher than the range it set for the other Old Brundage partners." See Collins Decl., Ex. 22, ¶ 62.  Again, the offer letter shows no indication of this. See Collins Decl., Ex. 22, BT 07295.

and remained there until July 12, 2002, when he tendered his resignation. See Pl.'s 56.1 ¶¶ 39, 87; Def.'s 56.1 ¶¶ 39, 87. During his tenure at Bessemer, Branin received two of the incentive payments laid out in the Purchase Agreement--in September 2001 and May 2002. Pl.'s 56.1 ¶¶ 25, 28; Def.'s 56.1 ¶¶ 25, 28. He was also awarded an unexpected bonus in 2000, Pl.'s 56.1 ¶ 57; Def.'s 56.1 ¶ 57, and a bonus equal to 50.6% of his base salary in 2001. Pl's 56.1 ¶ 72; Def.'s 56.1 ¶ 72. Defendant alleges a series of grievances detailing his diminished responsibilities, exclusion from meetings, and effective demotion throughout his time at Bessemer. See Def.'s Mem. of Law in Opposition to Pl.'s Motion for Summary Judgment ("Def.'s Opp'n") 6-7. Upon his resignation from Bessemer, Branin accepted employment at Stein Roe. See Pl.' 56.1 ¶ 88, Def.'s 56.1 ¶ 88. This move to Stein Roe and the resultant transfer of some of Bessemer's former clients to Branin's new firm is the subject of the direct claim in this action and the Court's decision dated April 10, 2006, which held defendant liable for impairment of good will in one of these transferred accounts. See Bessemer Trust Company, N.A. v. Branin, 427 F. Supp. 2d 386, 397 (S.D.N.Y. 2006).

## DISCUSSION

A court may only grant summary judgment when "there is no genuine issue as to any material fact and. . .the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). All ambiguities and factual inferences must be drawn in favor of the party opposing the motion. See Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 5 (2d Cir. 1999). The court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). To create an issue for trial, there must be sufficient evidence in the record to support a jury verdict in the

nonmoving party's favor. See id.

Defendant asserts four counterclaims: breach of contract with regard to his position at Bessemer, breach of contract with regard to his bonus, quantum meruit, and promissory estoppel. The two documents upon which defendant relies for these claims are the Purchase Agreement through which Bessemer acquired Brundage and Bessemer's offer of employment to Branin.

## A.   Defendant's Position at Bessemer

Defendant's first claim for breach of contract rests on both the Purchase Agreement and the offer letter.[3] Transcript, dated May 3, 2007 ("Tr."), at 24. Defendant's argument based on the Purchase Agreement fails on multiple grounds. Defendant contends that the language in the Purchase Agreement requiring seller to accept a position generally comparable to the one he or she held at Brundage implicates this first claim. He describes this language as "address[ing] . . . the parties' mutual employment obligations and assurances" and "employment terms" and refers to plaintiff's later conduct as "[a]borted [i]mplementation of [a]cquisition [t]erms." See Def.'s Opp'n 3-4, 6. This is a gross misconstruction of the document at issue. The Purchase Agreement plainly refers to this term as a "condition," to which the obligations of the parties to consummate the purchase are subject. See Collins Decl., Ex. 4, BT 06539-42. Assuming, arguendo, that money damages rather than rescission is the appropriate remedy for failure of this condition,[4]

---

[3] Defendant's counterclaims allege breach of the offer letter. See Collins Decl., Ex. 20, Counterclaim ¶¶ 61, 73 and attached offer letter. However, his Motion for Summary Judgment alleges breach of both the Purchase Agreement and offer letter. See Def.'s Opp'n 13-19.

[4] Defendant argues that, given the nature of this transaction, rescission was not a plausible solution. Tr. 21, 27-28. He is correct that rescission is an equitable remedy to be administered at the discretion of the court, only to be invoked when "the *status quo* may be substantially restored." Rudman v. Cowles, 30 N.Y.2d 1, 13 (N.Y. 1972). The Court need not address this issue with further specificity or determine whether or not the status quo could be restored, as all

5

there was no breach to which damages could be attributable.[5] Defendant does not contest that he was offered and he accepted a position comparable to his position at Brundage. Tr. 19. Therefore, prior to and immediately after closing, by defendant's own admission, plaintiff and defendant had satisfied the relevant conditions. See Def.'s Opp'n at 14; Tr. 19.

Nevertheless, defendant argues that his demotion effectively created a breach. Defendant relies largely on Rudman v. Cowles, 30 N.Y.2d 1 (N.Y. 1972), but this case is factually and legally inapposite. In part, defendant relies on Rudman for the proposition that the Purchase Agreement and offer letter are "mutually dependent."[6] Tr. at 24, 29. Even conceding that these documents

---

parties agree the condition was satisfied.

[5] In view of the generous benefits Branin received under the Purchase Agreement and offer letter, it is clear he suffered no legal damages as a result of any so-called breaches of any agreements in this case or of Bessemer's lack of good faith in relation thereto. It is undisputed that he received the salary and title he was offered. Tr. 39.

[6] This issue of mutual dependence was not addressed in this manner in the motion papers, but was argued at Oral Argument.
It should be noted that the Rudman court addresses this issue to dispose of plaintiff-employee's argument that, given the breach of the employment agreement, the purchase agreement should be rescinded. Rudman, 30 N.Y.2d at 13. Of course, this proposition was not used to argue for rescission in this case as that remedy was never sought by defendant-employee.
The Court of Appeals in Rudman notes that "[w]hether the parties intended to treat both agreements as mutually dependent contracts, the breach of one undoing the obligations under the other, is a question of fact." See Rudman, 30 N.Y.2d at 13. The court proceeds to cite factors to consider in such a determination-"the intent manifested, viewed in the surrounding circumstances," whether the parties made two separate contracts with separate assents, the formal parties to each contract, and the dates of execution. See id. In this case, although the Purchase Agreement included a template of the offer letter, the actual individualized letter and the Purchase Agreement are two separate documents. See Collins Decl., Ex. 4; Ex. 22. In fact, the actual offer letter states that it does not "supersede or modify any of the provisions of the Purchase Agreement dated August 18, 2000." Collins Decl., Ex. 22, BT 07295. The formal parties to the Purchase Agreement include Bessemer Trust, Brundage (signed for by the defendant as Chief Executive Officer), and the owners of Brundage - the defendant as an individual, Paul Barkus, Cheryl Grandfield, James G. Pepper, Brandon Reid, Malcolm D. Clarke,Jr., Jeanne Harrington, and Gregory E. Ratte. See Collins Decl., Ex. 4, BT 06561-66. The only signatures on the offer letter are that of defendant and of Bartholomew Sharp, Senior Vice President of Human Resources at Bessemer. See Collins Decl., Ex. 22, BT 07295. Finally, the actual letter offered defendant was separately executed. The Purchase Agreement was executed on August 18, 2000, and the offer letter was signed on September 29, 2000. See Collins Decl., Ex. 4, BT 06501; Ex. 22, BT 07295. The Court's treatment of these documents as separate or dependent is not essential to the Court's holding, as it finds for plaintiff on multiple other grounds. Therefore, though mutual

should be considered together, there is a significant factual distinction between Rudman and this case. Rudman involved an actual employment contract of definite duration, not simply an offer letter. Rudman, 30 N.Y.2d at 6. Here, the offer letter, which both parties agreed constituted satisfaction of a condition precedent, did not have a fixed term. See Collins Decl., Ex. 22. Therefore, it was terminable at will. See Albert v. Loksen, 239 F.3d 256, 264 (2d Cir. 2001) ("New York has a well-established at-will employment doctrine: 'Absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party.'"). Since the entire contract is terminable at will, Bessemer could surely change its terms in accordance with the needs of the company without breaching the agreement. See Sherman v. HarperCollins Publrs., 1998 U.S. Dist. LEXIS 11880, *9 (S.D.N.Y., July 31, 1998) ("The hallmark of an employment-at-will relationship is that the employer is free to modify the terms of the [employee's] employment, subject only to the [employee's] right to leave his employment if he found the terms unacceptable"). Having received substantial benefits from the employment arrangement, Branin is ill-equipped to say he was damaged by these changes in any way.

    Defendant's erroneous interpretation of the Purchase Agreement apparently stems from his allegation that plaintiff promised that defendant would be in "senior management and at the top of the compensation structure relative to his former Old Brundage partners." See Collins Decl., Ex. 20 ¶ 63. However, none of these promises appears in the Purchase Agreement, which includes a merger clause, stating that "No party shall be liable or bound to any other party in any manner by any representations, warranties or covenants relating

---

dependence of the documents may be a close question of fact, see Rudman, 30 N.Y.2d at 13, it is not one of material fact.

to such subject matter except as specifically set forth herein." Collins Decl., Ex. 4, BT 06559.

Any alleged representations that are not contained in the Purchase Agreement are, therefore, unenforceable.[7]  The Second Circuit has clearly held that, absent fraud in the inducement, "if a contract recites that all of the parties' agreements are merged in the written document, parol evidence is not admissible to vary . . . the terms of the integrated contract."  See Mfrs. Hanover Trust Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir. 1993).  Branin has made no allegations of undisclosed intentions not to perform the contract or of fraudulent inducement, see Collins Decl., Ex. 20, ¶¶ 72-87.  It follows that the Court may consider only language within the four corners of the document.

Finally, defendant argues a breach based on the implied terms of good faith and fair dealing.  It is not entirely clear what bad faith defendant is complaining about, as he has come forward with no evidence to raise a triable issue that when the Purchase Agreement was entered into and the offer letter signed, Bessemer did not plan to honor their terms.  Moreover, defendant agreed to accept as a generally comparable position that which was offered in his offer letter, which, at best, created a contract terminable at will.  There can be no bad faith in an employer altering or changing an employee's employment or responsibilities when it has complete discretion to terminate the employment altogether.

Moreover, the undisputed evidence establishes no change in salary

---

[7] See W.W.W. Assocs., Inc. v. Giancontieri, 566 N.E.2d 639, 642 (N.Y. 1990) ("When parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.  Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or to vary the writing.")  The Purchase Agreement's suggestion of a generally comparable position cannot, then, be supplemented by this parol evidence, as it is "a meaningful and enforceable standard," see Def.'s Opp'n 13.

received and shows that incentive payments and an unexpected bonus were paid. None of this can rationally support an inference of bad faith on the part of Bessemer. Furthermore, Branin is in no position to rely on any so-called bad faith by Bessemer, when, as the Court previously found, he was endeavoring to transfer good will for which he was paid by Bessemer under the Purchase Agreement to a new brokerage house, Stein Roe. See Bessemer Trust Company, N.A. v. Branin, 427 F. Supp. 2d 386, 397 (S.D.N.Y. 2006). If there were ever a case in which a person should be estopped from claiming bad faith, this is it.

**B.   Defendant's Bonus**

Defendant's second claim for breach of contract rests on the amount offered to him as a bonus in 2001. His offer of employment allows for a discretionary bonus range between 0% and 250% of his salary. The bonus awarded defendant was within this range. Defendant's citation to Valentine v. Carlisle Leasing, 1998 U.S. Dist. LEXIS 15581 (N.D.N.Y., Sept. 30, 1998), for the proposition that a reference to a Bonus Plan requires plaintiff to rigidly follow that plan, is in error. The Court in Valentine made clear that a discretionary bonus, is in fact, discretionary.[8] Though "the overriding principle is that an employee's entitlement to a bonus is governed by the terms of the employer's bonus plan," see Thomson v. Saatchi & Saatchi Holdings, 958 F. Supp. 808, 825 (W.D.N.Y 1997) (internal quotations omitted), defendant's offer letter contains the "'magic words' providing absolute discretion to the employer,"

---

[8] Defendant also relies on Sathe v. Bank of New York, 1990 U.S. Dist. LEXIS 5012 at *12 (S.D.N.Y., May 2, 1990), which denied defendant-employer's motion to dismiss despite a total reservation of discretion with regards to the employee's bonus. This denial was based on the fact that the plan specifically gave discretion to the Chairman, but another party exercised it. See id. Here, discretion is given to the Salary Committee, see Collins Decl., Ex. 22, BT 07294, and there is no allegation that any party other than a member of that committee exercised it.

see Canet v. Gooch Ware Travelstead, 917 F. Supp. 969, 985 (E.D.N.Y 1996). Although defendant's offer letter does refer to the Incentive Bonus Plan, which outlines some objective criteria, the language of defendant's offer letter is absolutely clear and unambiguous that Bessemer has complete discretion to award a bonus in the range of 0% to 250%. See Valentine, 1998 U.S. Dist. LEXIS 15581 at *11; Collins Decl., Ex. 2, BT 07294. See also McNabb v. MacAndrews & Forbes, 1991 U.S. Dist. LEXIS 18383, aff'd 972 F.2d 1328 (2d Cir. 1992) (language regarding employer's discretion in the employment agreement).

**C.  Promissory Estoppel and Quantum Meruit**

Defendant's third and fourth claims for quantum meruit and promissory estoppel are likewise without merit. As discussed above, not only did plaintiff receive a generous salary, but his bonus was at the discretion of the committee. Since defendant had no contractual right to a bonus above 0% of his salary and his bonus was clearly within the discretion of plaintiff, this claim must be dismissed. See Kaplan v. Capital Co. of Am. LLC, 747 N.Y.S.2d 504, 506 (1st Dep't 2002). Additionally, as to his promissory estoppel claim, New York law does not recognize promissory estoppel in the employment context. See Deutsch v. Kroll Assocs., Inc., 2003 U.S. Dist. LEXIS 16613, at *8 (S.D.N.Y., Sept. 23, 2003). Furthermore, the Second Circuit makes clear that a promissory estoppel claim requires proof of a "clear and unambiguous promise." See Readco, Inc., R.D.P v. Marine Midland Bank, 81 F.3d 295, 301 (2d Cir. 1996). At best, defendant's offer letter sets forth what he could reasonably expect in terms of compensation. See Collins Decl., Ex. 22. Given the range set forth in the letter, there is certainly no clear and unambiguous promise that defendant's bonus would meet or exceed any certain amount. Rather, there is a clear statement that it can range from 0-250% of his salary, which it did.

## CONCLUSION

Because there is no genuine issue of material fact, the Court grants plaintiff's Motion for Summary Judgment on all grounds.

**It is SO ORDERED.**

**DATED:**   New York, New York
             July 23, 2007

                                      _____
                                            John E. Sprizzo
                                      United States District Judge

**APPEARANCES**

CHADBOURNE & PARKE LLP
Attorneys for Plaintiff
30 Rockefeller Plaza
New York, NY 10112

    DONALD I. STRAUBER, ESQ.
    C. IAN ANDERSON, ESQ.
    LAURA M. JASTREM, ESQ.

    Of Counsel

BOND, SCHOENECK & KING, PLLC
Attorneys for Defendants
330 Madison Avenue, 39th floor
New York, NY 10017

    LOUIS P. DiLORENZO, ESQ.
    MICHAEL I. BERNSTEIN, ESQ.
    MICHAEL P. COLLINS, ESQ.

    Of Counsel